# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WENDY R. HONN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-CV-38-GKF-FHM |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,[1] | ) ) ) ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the court is the Report and Recommendation of United States Magistrate Judge Frank H. McCarthy on the judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits [Dkt. #23] and the Objections thereto filed by plaintiff, Wendy R. Honn. [Dkt. #24]. The Magistrate Judge recommended the Commissioner's decision be affirmed.

### I. Standard of Review

Pursuant to Fed.R.Civ.P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a de novo review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*,

---

[1] Effective February 14, 2013, pursuant to Fed.R.Civ.P. 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action.

331 F.3d 758, 760 (10th Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir.2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991)). Even if the court would have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1500 (10th Cir. 1992).

A claimant for disability benefits bears the burden of proving a disability.  42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a).  "Disabled" is defined under the Act as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of her alleged disability.  20 C.F.R. §§ 404.1512(b), 416.912(b).  A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908.  The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians.  20 C.F.R. § 404.1513(a),

416.913(a).  A plaintiff is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth the five steps in detail).  The claimant bears the burden of proof at steps one through four.  844 F.2d at 751 n. 2.  At step one, a determination is made about whether the claimant is presently engaged in substantial gainful activity.  844 F.2d at 750.  At step two, a determination is made whether the claimant has a medically determinable impairment or combination of impairments that significantly limit her ability to do basic work activities. *Id.* at 751.  At step three a determination is made whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Id.* If it is, the claimant is entitled to benefits.  *Id.* If it is not, the evaluation proceeds to the fourth step, where the claimant must show that the impairment prevents her from performing work she has performed in the past. *Id.*  If the claimant is able to perform her previous work, she is not disabled.  *Id.* If she is not able to perform her previous work, then this point, the claimant has met her burden of proof, establishing a prima facie case of disability.  The evaluation process then proceeds to the fifth and final step: determining whether the claimant has the residual functional capacity ("RFC")[2] to perform other work in the national economy in view of her age, education and work experience.  *Id.*  The Commissioner bears the burden at step five, and the claimant is entitled to benefits if the Commissioner cannot establish

---

[2] A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite her impairments:  the claimant's maximum sustained work capability.  *Williams,* 844 F.2d at 751.

3

that the claimant retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (citation omitted).

## II. Background

Plaintiff was 33 years old at the alleged date of onset of disability, June 1, 2005. [TR 284]. She claims to have been unable to work since that date as a result of hepatitis C, liver disease, fatigue, diabetes, headaches, depression, anxiety, shortness of breath, and problems with her hands, wrists, neck, knees and vision. She has an associate degree in interior design and formerly worked as an EKG technician, unit secretary, waitress, administrative assistant, data entry clerk and food worker. [TR 353, 375-382].

From February 11, 2007 to May 7, 2007, she underwent 81 days of a 336-day course of hepatitis C therapy to eradicate the underlying viral process, but the therapy was discontinued due to an increase in her viral load. [TR 555-556]. Her physician opined that the failure of the first treatment was most likely secondary to her underlying steatosis (lipid imbalance), diabetes and obesity, and he stressed weight loss and stabilization of her chronic medical conditions. [TR 774]. During a visit to her physician on June 3, 2008, plaintiff was reported as being "currently without complaints," and wanted to discuss treatment options. [TR 773]. She commenced a second course of hepatitis C therapy in July 2008, and at the time of the December 10, 2009, hearing, tested negative for hepatitis C. [TR 23, 120-121].

## III. Procedural History

Plaintiff applied for Social Security disability benefits on September 15, 2006. [TR 11]. Her claims were denied initially on February 2, 2007, and upon reconsideration on June 19, 2007. [TR 186-194]. Plaintiff requested a hearing before an administrative law judge ("ALJ") [TR 204-205]. The ALJ conducted a hearing on October 2, 2008 and issued an unfavorable

4

ruling on March 23, 2009. [TR 169 -181]. A request for review was filed on May 2, 2009, and the Appeals Council issued a remand order on August 26, 2009. [TR 183-185]. A second hearing was held on December 17, 2009, and the ALJ issued an unfavorable ruling on February 12, 2010. [TR 11-24]. The Appeals Council denied plaintiff's request for review on December 1, 2011. [TR 1-4]. Thus, the ALJ's decision serves as the final decision of the Commissioner. [*Id.*].

### IV. The ALJ's Decision

The ALJ determined plaintiff had the RFC to perform light work as defined by 20 CFR 404.1567(b) and 416.967(b) except she can lift/carry up to 20 pounds; stand/walk two hours out of an eight hour day, 30 minutes at one time; sit for six hours out of an eight hour day, one hour at a time; limited climbing; occasionally bend, stoop, squat, kneel, crouch, crawl, operate foot controls, and twist/nod head. Additionally, she would require low noise and light; avoid fine vision; slight limitation in fingering, feeling and gripping; avoid food service; have easy access to restrooms; and avoid extensive exposure to the sun. Also, she should avoid rough and uneven surfaces, unprotected heights, fast and dangerous machinery and heat. In regards to mental limitations, the work would need to be simple, repetitive, and routine; and she would need limited contact with the public, co-workers and supervisors. [TR 19].

In formulating his RFC, the ALJ, gave "great weight" to the records of the Indian clinics and hospitals and found that "[t]hey do follow the claimant's alleged impairments and more than once it was stated she was noncompliant with medical treatment." [TR 22].[3] Similarly, he gave "great weight" to the psychological consultative evaluations, which "both indicate that despite

---

[3] Medical records from the W.W. Hastings Indian Hospital in Tahlequah [TR 553-594; TR 756-783; TR 840-857]; the Sapulpa Indian Health Center [TR595-698; TR 701-747; TR 858-861] and the Claremore Indian Hospital [TR 748-755], covering a period from October 2002 to November 2009, show that, over the years, plaintiff has sought treatment for a variety of complaints, including colds, ear pain, sore throat, nausea, fatigue, sinus infections, anxiety and depression, hypertension, migraines, diabetes and hepatitis C.

the claimant's depression and anxiety, she would be able to perform some work activities."

[*Id.*].[4]  He gave "considerable weight" to the physical consultative examinations. [*Id.*].[5] He

stated:

> In sum, the above residual functional capacity assessment is supported by the consultative examinations and the Indian Health Care records.  It is evident that the claimant has had both physical and mental impairments, however; with her hepatitis C testing negative, quite a few of her symptoms should disappear within a few months.  The claimant still has some physical and mental restrictions, but should be able to perform simple and sedentary work.

[*Id.* at 23].

In posing hypotheticals to the vocational expert, the ALJ explained the fine vision and fingering, feeling and gripping limitations as follows:

> I want to avoid fine vision.  I'm not, again, telling [you] that she can't use her . . . eyes.  She can, but she shouldn't [be] doing . . . small, tedious tasks with eyes, like working with small nuts and bolts, working with pen and clip fastener, working with small details.  I'll have a slight limitation in finger, feel, and grip.  And this goes along with that previous one.  She shouldn't be doing small, tedious tasks, like working with nuts and bolts, small nuts and bolts, working with pen

---

[4] Consultative psychological examinations were conducted by Jan S. Kent, Ph.D., on January 8, 2007, and Minor Gordon, Ph.D., on November 10, 2008 [TR 513-518 (Ex. 8F); 806-814 (Ex. 24F)].  In her report, Dr. Kent stated that plaintiff told her the hepatitis C causes her to sleep fourteen to sixteen hours each day because of fatigue, and that she "primarily sleeps throughout the day." [TR 514].  The psychologist concluded plaintiff, "at the maximum, has the ability to adapt to a moderately demanding work environment," to "be able to understand complex instructions during a normal workday," and to "concentrate and persist on complex tasks during a normal workday." [TR 516]. Dr. Kent gave plaintiff a Global Assessment of  Functioning ("GAF") score of 55-60.  Dr. Gordon reported that plaintiff, when questioned about her activities of daily living, stated, "I either sleep or I sit in my recliner and watch television or I read." [TR 807].  She told him she "has difficulty initiating and maintaining sleep," has a low energy level and was "fatigued." [TR 807-808].  He concluded plaintiff's activities of daily living are "far less than normal," her primary problem "appears to be dependent personality traits," and "[a]ny problems she may be having with anxiety and depression are secondary to unmet dependency needs." [TR 809].  He stated, "Mrs. Honn certainly could be expected to perform some type of routine and  repetitive task on a regular basis.  She would be able to relate adequately with coworkers and supervisors on a superficial level for work purposes.  Whereas Mrs. Honn is not seen as being incapacitated by her problems she is seen as functioning at a lower level of efficiency." [*Id.*].  He gave plaintiff a GAF of 70.  [*Id.* at 810].

[5] Consultative physical examinations were performed by Mohammed Quadeer, M.D. on December 28, 2006 [TR 519-526 (Ex. 9F)] and by Beau C.Jennings, D.O. on January 9, 2009. [TR 815-833 (Ex. 25F)].  In his assessment, Dr. Quadeer  listed morbid obesity; non-insulin-dependent diabetes mellitus of one-year duration under fair control with medications; hepatitis C diagnosed 2 years ago; migraine headaches; "[d]ropping things from the right hand and the grip in the right hand and left hand are equal and 5/5 status post carpal tunnel surgery on the right hand;' and anxiety and depression.  [TR 521-522].   In his assessment, Dr. Jennings listed obesity, chronic fatigue and chronic pain in both knees. [TR 815].

and clip fastener. She can put her kids' bicycle together, but she might have trouble playing with her kids' erector set.

[TR 154-155].

The ALJ found plaintiff could not return to her past relevant work with these limitations, but based on the testimony of a vocational expert, he determined there were a significant number of jobs in the national economy plaintiff could perform with these limitations. [TR 24]. Specifically, the vocational expert testified plaintiff could perform the requirements of clerical mailer (7,500 in region, 88,000 in nation, DOT #209.587-010); and surveillance monitor (2,000 in region, 27,000 in nation, DOT #379.367-010). [*Id.*].

## V. Plaintiff's Appeal

On appeal, plaintiff asserted (1) the ALJ erred by relying on vocational expert testimony that conflicted with job descriptions of the Dictionary of Occupational Titles ("DOT"); and (2) the RFC finding is not supported by substantial evidence because it fails to contain limitations related to her chronic fatigue. [Dkt. #20]. The Commissioner, in her response, conceded the ALJ erred in concluding plaintiff could perform the job of surveillance monitor with her limitations. [Dkt. #21 at 4].

In his Report and Recommendation, the Magistrate Judge found that plaintiff could, with her limitations, perform the job of clerical mailer; therefore work exists in the national economy sufficient to support a finding at step five that there are significant number of jobs in one or more occupations which have requirements plaintiff is able to meet. [Dkt. #23 at 5]. Further, the Magistrate Judge rejected plaintiff's contention the ALJ ignored plaintiff's complaints of fatigue, noting that plaintiff's complaints of fatigue were mentioned throughout the ALJ's decision. [*Id.* at 6]. He observed that the ALJ did not find plaintiff entirely believable, and opined that the ALJ adequately accounted for plaintiff's claims of fatigue by finding she could perform light work,

7

mostly sitting. [*Id.*].  In light of plaintiff's failure to challenge the ALJ's credibility finding, the Magistrate Judge found that the ALJ adequately discussed the evidence and his conclusion about plaintiff's RFC is supported by substantial evidence.  [*Id.*].

In her Objections to the Magistrate Judge's Report and Recommendation, plaintiff asserts the Magistrate Judge erred  (1) in finding that the fingering and feeling restrictions imposed by the ALJ do not preclude performance of the clerical mailer job; (2) in finding the vision limitation would not preclude performance of the clerical mailer job merely because the job description does not mention "fine print;" and (3) in concluding the ALJ's credibility finding cured the failure to include chronic fatigue as a limitation in the RFC.  [Dkt. #24].

## VI. Analysis

### A. Fingering and Feel Restrictions

The DOT description for "addresser" states, in pertinent part:  "Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing.  May sort mail."  *DICOT,* 209.587-010, 1991 WL 671797.  Further, the job requires "frequently" reaching, handling and fingering.  *Id.*

The Magistrate Judge found that the limitation on fingering, feeling and gripping described by the ALJ  "cannot reasonably be read to preclude performance of the clerical mailer job requirement of 'address[ing] by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing.'"  [Dkt. #23 at 4-5].  Plaintiff asserts the Magistrate Judge reached this conclusion "apparently because the job did not involve small nuts and bolts or pin and clip fasteners," and she argues the Magistrate Judge read the ALJ's description far too narrowly. [Dkt. #24 at 5].  Use of a typewriter, she contends, "requires tremendous hand dexterity and certainly requires the person to be able to feel the keys."  [*Id.*].

8

The court disagrees. Working with small nuts and bolts is not akin to striking typewriter keys. While a total loss of feeling in her fingers might limit plaintiff's ability to strike typewriter keys, a slight loss of feeling would not. Therefore, the court rejects plaintiff's argument that the restriction described by the ALJ conflicts with the DOT description.

### B. Fine Vision

In her brief on appeal and again in her objections to the Magistrate Judge's Report and Recommendation, plaintiff argues the DOT job description for "mail addresser" would require her to read "fine print," which would be contrary to the "fine vision" limitation described by the ALJ (i.e., "she shouldn't [be] doing small, tedious tasks, like working with nuts and bolts, small nuts and bolts, working with pen and clip fastener.") [TR154]."

The DOT description for "addresser" provides that "near acuity" exists "constantly," i.e., two-thirds or more of the time. *DICOT,* 209.587-010, 1991 WL 671797. The *DOT* defines "near acuity" and "far acuity," but does not define "fine vision," the term used by the ALJ in his hypothetical and in the RFC he formulated. *See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* App. C (U.S. Department of Labor, Employment and Training Administration 1993) (defining "near acuity" as "[c]larity of vision at 20 inches or less" and "far acuity" as "[c]larity of vision at 20 feet or more" and noting that the *DOT* does not rate acuity at distances between 20 inches and 20 feet). Thus, the alleged inconsistency regarding fine vision is an implied or indirect conflict rather than a direct conflict.

Where a "conflict" is "implied or indirect," the ALJ is permitted to rely upon the vocational expert's testimony, "provided that the record reflects an adequate basis for doing so." *Segovia v. Astrue,* 226 Fed.Appx. 801, 804 (10th Cir. 2007) (unpublished) (quoting *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000)).

9

At the December 17, 2009 hearing, plaintiff testified that over the preceding four to six months, she had started having issues with night vision, and as a result, she had limited her driving. [TR 119-120]. She stated she does "not generally" have any problem reading, but "sometimes I go blurry from the diabetes." [TR 105]. She reported to a consultative psychologist on November 10, 2008, that one of her activities of daily living is reading. [TR 807].

The ALJ has a duty to inquire whether the vocational expert's testimony conflicts with the DOT and to resolve any apparent conflicts before relying upon that testimony. *See Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009). At the conclusion of the vocational expert's testimony, the ALJ asked her whether there had been any deviation from the DOT in her testimony that needed to be explained, and she responded in the negative. [TR 157]. Although plaintiff's counsel cross examined the expert regarding the effect of the fingering and feel restrictions on plaintiff's ability to perform the mail addresser job, he did not question her or raise any objection with respect to the fine vision limitation. [TR 161-162]. Based on the vocational expert's response and plaintiff's attorney's failure to raise any objections at the hearing, the ALJ properly relied on the vocational expert's testimony. *Id.*

Additionally, plaintiff contends her vision problems preclude performance of the job because the "addresser" occupation requires near acuity "constantly," and she sometimes has trouble reading when her eyes get blurry from diabetes. However, plaintiff testified she does "not generally" have a problem with reading, and medical records consistently list reading as one of her pastimes.

The court concludes the ALJ's decision is supported by substantial testimony.

### C. Chronic Fatigue

Plaintiff asserts the ALJ erred in failing to include limitations in the RFC related to her fatigue. [Dkt. #24 at 9].[6]

In *Cowan v. Astrue,* 552 F.3d 1182, 1189 (10th Cir. 2008), the court addressed a similar issue. There, plaintiff Cowan claimed disability due to stroke, three heart attacks, emphysema, asthma and depression. *Id.* at 1184. The ALJ found Cowan had the RFC to perform light work with limitations that he could only occasionally climb, balance, stoop, kneel, crouch and crawl and "should avoid concentrated exposure to dusts, fumes, odors, gases, etc." *Id.* On appeal, Cowan argued the RFC should have included a limitation for left-arm weakness resulting from an earlier stroke. *Id.* at 1189. The appellate court noted that in her decision, the ALJ had specifically referenced medical records showing left-armed weakness and found that Cowan had a slight resultant left sided arm weakness and a weakened left hand grip, but observed he was right handed. *Id.* at 1190. The court stated:

> We disagree that we must reverse due to the fact that the ALJ's RFC formulation failed to include further limitations to account for Mr. Cowan's left-arm weakness. An ALJ's RFC formulation must be supported by substantial evidence which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and requires more than a scintilla but less than a preponderance.

*Id.*

---

[6] At the hearing held December 17, 2009, plaintiff testified the biggest side effect from her hepatitis C was "extreme fatigue, weakness, sleepy all the time." [TR 122]. She stated she probably sleeps 14 to 15 hours a day; cannot usually go longer the three to four hours without having to lie down and nap; and when she did so, she slept for at least two hours and closer to three hours. [*Id.*]. The vocational expert, on cross examination by plaintiff's attorney, testified that if an individual needed to sleep approximately two hours after being up and working for four hours, the person would not be able to perform the mail addresser job. [TR 161-162]. Further, if an individual needed to sleep any more than the break times available in a standard workday (two hours, 15-minute break, two hours, half-hour lunch, two hours, 15-minute break, two hours, go home), the person would be non-employable. [TR 162].

11

In this case, as in *Cowan,* the plaintiff challenges the sufficiency of the RFC formulated by the ALJ. Specifically, she contends the RFC should have contained further limitations to account for her fatigue.

As plaintiff notes, there is no dispute the ALJ acknowledged plaintiff's complaints of fatigue. [Dkt. #24 at 9]. In his review of medical evidence, he noted at least seven reports in which plaintiff complained of fatigue. [TR 14-16].[7] He acknowledged plaintiff's testimony that she could not exert a lot of activity or walking without it causing her to become extremely tired or short of breath; that she suffered from extreme fatigue and weakness and was sleepy all the time; that she sleeps 14 to 15 hours per day; and that she cannot go more than three to four hours without lying down. [TR 20]. In discussing the RFC, the ALJ observed, in pertinent part, that plaintiff "stated she could not exert a lot of activity or walking without it causing her to become extremely tired or short of breath." [*Id.*].

In weighing the plaintiff's testimony, he concluded:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment.

[TR 21].[8]

---

[7] In a physical consultative examination on December 23, 2006, Mohammed Quadeer, M.D., stated that plaintiff had reported sleeping "about 13 or 14 hours out of 24 hours," and he attributed her symptoms of weakness and sleepiness to hepatitis C. [TR 519, 522]. Jan S. Kent, Ph.D., in a consultative psychological examination, stated that plaintiff reported her hepatitis C caused her to sleep 14 to 16 hours each day because of fatigue. [TR 514]. During treatment for hepatitis C at the W.W. Hastings Indian Hospital in 2007, plaintiff reported fatigue. [TR 565, 567, 569]. In a visit to the Sapulpa Indian Health Center on January 23, 2006, she reported fatigue. [TR 625]. In a visit to the W.W. Hastings Indian Hospital on June 23, 2006, she complained of being fatigued a lot. [TR 775]. In a visit to the same facility on August 4, 2006, she complained of being "tired." [TR 769]. During a consultative psychological examination by Minor Gordon, Ph.D., she complained of fatigue. [TR 808].

[8] The Magistrate Judge, in his Report and Recommendation, found that in view of the ALJ's credibility determination, he adequately accounted for plaintiff's complaints of fatigue by finding that she could perform light work to be performed mostly sitting as standing and walking were limited to 2 hours of the workday. [Dkt. #23 at 6]. Plaintiff, in her objection, asserts the ALJ's credibility finding is not at issue here. [Dkt. #24 at 9]. Instead, she

As set forth in Section IV above, the RFC formulated by the ALJ restricted plaintiff to light work to be performed mostly sitting, with standing and walking limited to two hours.

Here, as in *Cowan,* the court must determine whether the ALJ's formulation is supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and requires more than a scintilla but less than a preponderance.  552 F.3d at 1190.  The court holds the ALJ's conclusion about plaintiff's RFC is supported by substantial evidence.   Specifically, both Dr. Kent and Dr. Gordon noted plaintiff's complaints of fatigue.  However, Dr. Kent determined plaintiff  "has the ability to adapt to a moderately demanding work environment," to "be able to understand complex instructions during a normal workday," and  to "concentrate and persist on complex tasks during a normal workday."  [TR 516].  And Dr. Gordon found that plaintiff  "certainly could be expected to perform some type of routine and repetitive task on a regular basis.  She would be able to relate adequately with coworkers and supervisors on a superficial level for work purposes. Whereas Mrs. Honn is not seen as being incapacitated by her problems she is seen as functioning at a lower level of efficiency."  [TR 809].  Further, extensive medical records from the Indian clinics contain some complaints of fatigue, but those complaints are not pervasive in the Indian clinic records as a whole.

Viewing the records as a whole, the court concludes the RFC's limitation of plaintiff to light work, to be performed mostly sitting, with standing and walking limited to two hours of the workday, adequately accounted for plaintiff's complaints of fatigue.

---

argues that while the ALJ acknowledged she suffered from fatigue, and at step three, expressly found that "[h]er pace would be slower due to fatigue, "there is no limitation in the RFC related to fatigue," and as a result, the ALJ's finding as to the RFC is not supported by the record.  [*Id.*].

## VII. Conclusion

For the foregoing reasons, plaintiff's Objections to the Magistrate Judge's Report and Recommendation [Dkt. #24] are overruled. The court accepts the Magistrate Judge's Report and Recommendation [Dkt. #23] and affirms the decision of the Commissioner.

ENTERED this 25th day of March, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT